UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JORDAN DAVID KNIPPLING,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GAIL ROBBINS,<br><br>　　　　　Defendant. | CASE NO. 3:15-CV-05829-RJB-JRC<br><br>REPORT AND RECOMMENDATION<br><br>NOTED FOR:  MARCH 10, 2017 |

The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4.  Presently before the Court is defendant's second motion for summary judgment. Dkt. 45.

Over the course of a two-week period in September 2015, plaintiff filed approximately 33 grievances. Defendant, a grievance coordinator, repeatedly advised plaintiff that under Department of Corrections rules, he was not permitted to have more than five open grievances at a time, and that several of his grievances required rewriting. Plaintiff contends that defendant rejected his grievances and issued an infraction in retaliation for exercising his First Amendment rights.  Plaintiff failed to respond to defendant's second motion, and while his pleadings are

REPORT AND RECOMMENDATION - 1

considered a valid affidavit to oppose summary judgment, his verified complaint does not establish facts within plaintiff's knowledge which create a material issue of fact that defendant acted with a retaliatory motive. Moreover, plaintiff has failed to show that the five-grievance limitation was an impermissible limitation on his First Amendment right to file grievances. Thus, the Court recommends granting defendant's motion and dismissing with prejudice plaintiff's First Amendment, Sixth Amendment and state law claims.

## FACTS

Defendant provides the following facts, which plaintiff has not disputed. Plaintiff was housed at the Washington Corrections Center ("WCC") when he filed his complaint. Dkt. 6. On September 8, 2015, defendant, who is the WCC grievance coordinator, received 11[1] grievances from plaintiff, dated September 3, 2015 to September 7, 2015. Dkt. 31, Declaration of Defendant Robbins at ¶ 8, Exs. 2, 3. Defendant informed plaintiff that he was over the procedural limit of five grievances and advised plaintiff of the consequences for violating the Offender Grievance Program ("OGP"). *Id.* at ¶¶ 7, 9. Defendant also advised plaintiff that several of his grievances needed to be rewritten to include more information and that complaint related to his classification status was not grievable. *Id.* at ¶ 9, Exs. 2, 3. Defendant informed plaintiff that he could choose five grievances to continue with and that he could be infracted if he continued to submit additional grievances. *Id.*

From September 14, 2015 to September 15, 2015, plaintiff submitted an additional 17 grievances, dated September 10, 2015 to September 14, 2015. *Id.* at ¶ 10. On September 21, 2015, defendant attempted to meet with plaintiff to discuss the grievance program, explain how

---

[1] The notice sent to plaintiff states that there were 12 grievances but only 11 grievance numbers were noted. Dkt. 31-1 at Ex. 2.

the procedures worked, and deliver another written notice advising plaintiff that he must follow the OGP. *Id.* at ¶ 11. Plaintiff refused to speak with defendant and stated that she could just send him the notice. *Id.* In the notice, defendant again advised plaintiff about the grievance procedure rules, that plaintiff needed to select five grievances and that he would be infracted if he continued to violate the OGP rules. *Id.* at ¶ 12, Exs. 3-5.

      The same day, plaintiff submitted another seven grievances. *Id.* at ¶ 13, Ex. 7. Defendant then wrote an initial infraction report stating that plaintiff was abusing the grievance process. *Id.* at ¶ 13, Ex. 6. Defendant received authorization from the prison superintendent to issue the infraction for interfering with staff duties, but failed to include the authorization in the infraction report. *Id.* at ¶¶ 7,13. Due to this error, the hearing officer dismissed the infraction. *Id.* at ¶ 13, Ex. 8.

      On September 24, 2015, plaintiff submitted an additional 15 grievances to defendant, dated September 23, 2015 to September 24, 2015. *Id.* at ¶ 14. Defendant again sent plaintiff a notice and informed plaintiff that he could select five grievances to pursue. *Id.* at ¶ 14. Defendant advised plaintiff that further abuse of the grievance process could result in an infraction. *Id.* at ¶ 14.

## BACKGROUND

      On October 24, 2016, the undersigned issued a Report and Recommendation that recommended dismissal of plaintiff's claims for violation of his Equal Protection and Due Process rights. Dkt. 34. This Court noted that defendant had not specifically addressed plaintiff's Sixth Amendment and First Amendment claims, and, therefore, recommended that the motion for summary dismissal of all claims should not be granted. *Id.* District Judge Bryan adopted the

Report and Recommendation, Dkt. 40, and defendant was given an additional opportunity to submit an additional dispositive motion to address all remaining issues in the case. Dkt. 41, 43.

Defendant filed her second motion for summary judgment on January 3, 2017. Dkt. 45. Defendant electronically sent plaintiff a *Rand* Notice on the same day. Dkt. 46. This *Rand* Notice informed plaintiff that defendant had filed a second motion for summary judgment seeking to have plaintiff's case dismissed, and stated that if plaintiff failed to submit his own evidence in opposition, summary judgment may be entered against him. *See id.*

Plaintiff did not file a response to defendant's second motion for summary judgment and did not file any declarations or exhibits refuting defendant's presentation of the relevant events. *See* Dkt. Therefore, plaintiff has failed to refute any of the facts provided by defendant.

However, because plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Plaintiff filed a verified complaint. Dkt. 6. A verified complaint, like plaintiff's, "may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence." *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (internal quotations omitted); *see also Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). But allegations that are based merely on the plaintiff's belief are insufficient to oppose summary judgment, as are unsupported conjecture and conclusory statements. *See Hernandez v.*

*Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

## STANDARD OF REVIEW

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the material facts before the court and the moving party is entitled to judgment as a matter of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990). The moving party is entitled to summary judgment if the evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). To determine if summary judgment is appropriate, the court must consider whether particular facts are material and whether there is a genuine dispute as to the material facts left to be resolved. Fed. R. Civ. P. 56(c). Where there is a complete failure of proof concerning an essential element of the non-moving party's case on which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented through the prism of the substantive evidentiary burden").

## DISCUSSION

In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

### A. First Amendment

Plaintiff alleges that he was retaliated against for exercising his right to file grievances. Dkt. 6 at 10 (plaintiff alleges that defendant threatened him on September 21, 2015); *id.* at 12 (plaintiff alleges that defendant harassed him).

Plaintiff has a First Amendment right to petition the government through prison grievance procedures and to be free from retaliation for doing so. *See Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009); *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). To prevail on a retaliation claim under § 1983, a plaintiff must show: (1) an adverse action taken by a state action against the inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment right or would chill or silence the speech of a person of ordinary firmness and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir. 2005); *Resnick v. Hayes*, 213 F.3d 443, 449 (9thCir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Watison v. Carter,* 668 F.3d 1108, 1114 (9th Cir. 2012).

In order to survive summary judgment, the plaintiff bears the burden of showing that there was no legitimate penological objective to the defendant's actions. *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). A retaliation claim is not plausible if there are "more likely explanations" for the action. *Iqbal*, 129 S.Ct. at 1951; *see, e.g., Pratt*, 65 F.3d at 808. In evaluating a retaliation claim, the Court is required to "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt,* 65 F.3d at 807 (*quoting Sandin,* 515 U.S. 472, 482 (1995) ("federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment" (citations omitted)). "Security, of course, is the

1  paramount concern of prison administrators. As the Supreme Court has noted: 'The essence of a
2  correctional counselor's job is to maintain prison security.' " *Teamsters Local Union No. 117 v.*
3  *Washington Dept. of Corrections,* 789 F.3d 979 (9th Cir. June 12, 2015) (*quoting Dothard v.*
4  *Rawlinson,* 433 U.S. 321, 335, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977)) (further citation omitted).
5  "[I]nstitutional security ... is 'central to all other corrections goals.' " *Hudson v. Palmer,* 468
6  U.S. 517, 527–28, (1984) (*quoting Pell v. Procunier,* 417 U.S. 817, 823 (1974)).
7         Defendant contends that plaintiff fails to establish any adverse action against plaintiff,
8  that any action had a chilling effect on the exercise of plaintiff's rights or that there was an
9  absence of a legitimate penological goal. Dkt. 45 at 10.
10        While plaintiff alleges he was engaged in protected speech, his conclusory allegation that
11 defendant harassed and threatened him, without more, is insufficient to show that defendant took
12 an adverse action because plaintiff filed grievances. And even assuming that defendant's conduct
13 constituted an adverse action that would chill or silence the speech of a person of ordinary
14 firmness, the unrefuted evidence shows that defendant was not acting with a retaliatory motive.
15 Dkt. 31. Instead, the evidence shows that defendant rejected plaintiff's grievances and issued a
16 notice and infraction because plaintiff violated OGP rules. *Id.* at ¶ 7, 9, 15, 16. Defendant also
17 presents evidence showing that her actions advanced the legitimate penological goal of
18 preserving the safety WCC inmates and staff. Dkt. 31 at ¶ 16. *See Barnett v. Centoni,* 31 F.3d
19 813, 815–16 (9th Cir. 1994) (prison officials have a legitimate penological interest in the
20 preservation of institutional order and discipline).  Defendant declares that if offenders were able
21 to file unlimited grievances, it would overrun the system, and in turn, would hinder prison staff
22 from resolving conflicts. Dkt. 31 at ¶ 16.

1    Because defendant has presented affirmative evidence negating an essential element of
2 plaintiff's claim, plaintiff, as the nonmoving party, "must do more than simply deny the veracity
3 of everything offered." *Matsushita,* 475 U.S. at 586; *see also* Fed. R. Civ. P. 56(e). In a case such
4 as this, the prisoner must show that "the prison authorities' retaliatory action did not advance
5 legitimate goals of the correctional institution or was not tailored narrowly enough to achieve
6 such goals." *Rizzo,* 778 F.2d at 532. Plaintiff bears the burden of proving "that there were no
7 legitimate correctional purposes motivating the actions he complains of." *Pratt,* 65 F.3d at 808.

8    Plaintiff did not oppose defendant's second motion. *See* Dkt. In his verified complaint, he
9 simply states that defendant threatened and harassed him in violation of his First Amendment
10 rights. Dkt. 6 at 10, 12, 14, 15. Plaintiff's pleadings are considered a valid affidavit to oppose
11 summary judgment, however, plaintiff's conclusory allegations that his First Amendment rights
12 were violated, without any facts to support this claim, are insufficient to survive defendant's
13 second motion for summary judgment.  Plaintiff has not alleged or provided any specific facts
14 suggesting that defendant's actions did not advance legitimate penological goals, as was his
15 burden. Accordingly, defendant's second motion for summary judgment as to this claim should
16 be granted.

17    To the extent that plaintiff alleges that the rejection of his grievances infringed on his
18 First Amendment right to seek redress, the regulation limiting inmates to five grievances at a
19 time would still be lawful because it relates to a legitimate penological interest. The Supreme
20 Court identified four factors in *Turner* district courts are to "consider when determining the
21 reasonableness of a prison rule." *Turner v. Safley,* 482 U.S. 78, 89 (1978). Those factors are:

22      (1) whether the regulation is rationally related to a legitimate and neutral
        governmental objective, (2) whether there are alternative avenues that remain
23      open...to exercise the right, (3) the impact that accommodating the asserted right
        will have on other guards and prisoners, and on the allocation of prison resources;
24

and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

*Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1978)).

Applying these factors, the Court finds that the practice of limiting prisoners to five open grievances at a time is reasonably related to the legitimate governmental objective of efficiently processing grievances. Defendant declares that if inmates were allowed to file an unlimited number of grievances, the volume would increase significantly. Dkt. 31 at ¶ 16. In limiting the number of open grievances, the DOC ensures that grievances are processed quickly and prioritizes grievances that are time sensitive. *Id.* Inmates have alternative avenues to communicate with DOC staff about their complaints. As defendant points out, inmates can close one of the five open grievances to file a new one, wait to file a new grievance, or ask for an extension. *Id.*; Dkt. 31-1 at 27, 31-32. Accommodating plaintiff's desire to file unlimited grievances would result in other inmates' grievances being processed more slowly, decreasing administrative efficiency and increasing expenses. Finally, refusing to allow more than five grievances at a time is not unduly burdensome, since it only limits the number of grievances, but still provides inmates with the ability to communicate their complaints.

Viewing the facts in the light most favorable to plaintiff, the Court finds that defendants are also entitled to summary judgment as to plaintiff's claim that the rejection of his grievances prevented him from petitioning the government for redress.

**B. Sixth Amendment**

Plaintiff alleges that his "right to open court" under the Sixth Amendment was violated. Dkt. 6 at 14. The Sixth Amendment guarantees an inmate the right to counsel and to represent himself in criminal proceedings, *Faretta v. California,* 422 U.S. 806, 834–36 (1975), including

1    access to law books, witnesses, and other tools necessary to prepare a defense, *Taylor v. List,* 880
2    F.2d 1040, 1047 (1989) (quotation marks and citation omitted); *Milton v. Morris,* 767 F.2d 1443,
3    1446–47 (9th Cir. 1985). The Sixth Amendment is meant to assure fairness in the adversary
4    criminal process and the right to counsel attaches when the government initiates adversarial
5    proceedings. *United States v. Danielson,* 325 F.3d 1054, 1066 (9th Cir.2003) (quotation marks
6    omitted).

7    Here, plaintiff's allegations do not support a Sixth Amendment claim. His vague
8    allegation that he was denied "open court" fails to articulate a cognizable legal theory or describe
9    a deprivation of a particular protected constitution. In addition, the Sixth Amendment applies to
10   criminal proceedings, which have no bearing on plaintiff's use of the grievance process at
11   WCCC. Accordingly, the Court recommends granting defendants' motion as to this claim.

12   **C. Qualified Immunity**

13   As the Court has concluded that plaintiff has failed to raise material issues of fact relating
14   to his constitutional claims, it is not necessary to address the question of qualified immunity. *See*
15   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223 (2009);
16   *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

17   **D. State Law Claims**

18   In addition to his federal claims, plaintiff also alleges numerous state law claims,
19   including, a breach of duty of care, violation of RCW 9.10.120, violation of RCW 9.05.060,
20   criminal sabotage, negligence, harassment, and Washington Constitutional violations. Dkt. 6 at
21   11-16.

22   In a case involving federal and state claims, this Court has the discretion to assume
23   supplemental jurisdiction over state law claims that "derive from a common nucleus of operative
24

fact" and "are so related to the federal that they form part of the same case or controversy." 28 U.S.C. § 1367(a); *City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 165 (1997). In deciding whether to exercise supplemental jurisdiction, district courts should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago, supra*, at 172-73 (*quoting Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357 (1988)). "In the usual case in which all federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims," *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir .1997) (en banc) (*quoting Carnegie-Mellon, supra*).

Because plaintiff's federal claims fail as a matter of law, the undersigned recommends that this Court decline supplemental jurisdiction over plaintiff's state law claims.

**E.  Malicious/Frivolous Finding**

Defendant urges this court to find this action malicious and frivolous because plaintiff's claims have no basis in law or fact. Dkt. 45/

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $350.00. *See* 28 U.S.C. § 1914(a). An action may proceed despite a party's failure to prepay the entire fee only if the party is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). The Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(g) provides that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it was frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Pursuant to § 1915, notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... "the action is frivolous or malicious..." or "fails to state a claim upon which relief could be granted." 28 U.S.C. § 1915(e)(2)(a). A case is frivolous if it has no basis in law or fact. *See Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). Malicious has been defined to include an action that is "plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Abdul-Akbar v. Dep't of Corr.*, 910 F. Supp. 986, 999 (D. Del. 1995). Courts have read related situations into § 1915(g) when a claim is baseless, without merit, or an abuse of the judicial process. *See Smith v. Duke*, 296 F. Supp. 2d 965, 966 (E.D. Ark. 2003). The phrase "fails to state a claim on which relief may be granted," as used elsewhere in § 1915, "parallels the language of Federal Rule of Civil Procedure 12(b)(6)." *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (interpreting § 1915(e)(2)(B)(ii) and employing the same de novo standard of review applied to Rule 12(b)(6) motions).

Where an order explicitly states summary judgment is proper because the case is frivolous, malicious, or fails to state a claim (one of the grounds enumerated by the PLRA), the dismissal counts as a strike. *El-Shaddai v. Zamora United States Court of Appeals*, 833 F.3d 1036 (9th Cir. 2016). Here, however, summary judgment is not granted on an enumerated PLRA ground. Rather, summary judgment is based on the evidence presented by defendant which shows that she did not violate plaintiff's constitutional rights. Based on the foregoing, the undersigned declines to recommend that the action be dismissed as malicious or frivolous.

## CONCLUSION

Therefore, for the stated reasons, the Court recommends that defendant' second motion for summary judgment (Dkt. 45) be granted and all claims be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **March 10, 2017**, as noted in the caption.

Dated this 17th day of February, 2017.

J. Richard Creatura
United States Magistrate Judge